IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-23-680-D |
| ELI JARJOURA, D.D.S., | ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant's *Daubert* Motion to Exclude Certain Opinions of Bruce Horn [Doc. No. 33]—Plaintiff's expert witness. Plaintiff filed a Response [Doc. No. 41]. Defendant did not reply. The matter is fully briefed and ripe for consideration.

## BACKGROUND

This case arises out of Plaintiff's allegations that Defendant dispensed Schedule IV controlled substances without a "legitimate medical purpose . . . in the usual course of his professional practice" in violation of 21 U.S.C. §§ 829, 842(a)(1). Compl. at 1. Plaintiff seeks statutory penalties under 21 U.S.C. § 842(a)(1) and 842(c)(1)(A). *Id*. at 4.

Dr. Horn is Plaintiff's expert witness on dentistry and sedation practice. *See* Report [Doc. No. 37 at p. 1]. Dr. Horn's report, submitted pursuant to Rule 26, opines on "whether prescriptions written and issued by [Defendant] . . . were (i) issued for a legitimate medical purpose; and/or (ii) issued within the ordinary course of professional practice." *Id*.

To arrive at his opinions, Dr. Horn first reviewed Defendant's patient records and

1

then compared the practices described therein with commonly accepted practices in the dental field, as well as Dr. Horn's own experience. *Id*. at 1-2. Dr. Horn concluded that Defendant's prescription practices regarding certain sedation drugs had no "legitimate medical purpose and were outside the course of usual professional practice." *Id*. at 1.

Specifically, Dr. Horn makes three related contentions. First, Dr. Horn notes that Defendant prescribed abnormally high quantities of the benzodiazepines Triazolam and Alprazolam despite no "reliable, accepted publication supporting the combined use of these [two] sedatives in sedation dentistry."[1] *Id*. at 9-12. Second, Dr. Horn contends that Defendant's recordkeeping was deficient. *Id*. at 12-13. In his words, "sedation dental practice . . . [should be based] on the individual characteristics of each patient," and patient records should contain these details to ensure "safe dosing[,]" but Defendant's records lacked the requisite detail. *Id*. Third, Dr. Horn asserts that Defendant could not have effectively monitored his patients given the amount of sedation medication administered. *Id*. at 13-14. Such levels of sedation medication, Dr. Horn argues, would have placed Defendant's patients in physical danger. *Id*.

In the instant motion, Defendant argues that Dr. Horn's opinion should be excluded pursuant to Fed. R. Evid. 702. Defendant asserts Dr. Horn lacks the qualifications necessary to comment on prescription drug safety and drug interactions because he is trained as a dentist and not as a pharmacist.

---

[1] Dr. Horn notes that "[i]t is not the usual professional practice to prescribe excessive dosages and large quantities of Benzodiazepines for a single dental encounter without a legitimate medical purpose." *Id*. at 9.

Defendant further argues that certain portions of Dr. Horn's report are either irrelevant or prejudicial. Def. Mot. to Excl. at 1-2; 5-7. Defendant cites to portions of the report in which Dr. Horn comments on the following topics: (1) the presence of expired sedative antagonists in Defendant's office stock; (2) Defendant's practice of intravenously administering the benzodiazepine Midazolam; (3) the accuracy of Defendant's medical recordkeeping; (4) appropriate dosing of prescriptions kept in Defendant's office stock; (5) the application of the Oklahoma Board of Dentistry statutes and regulations to Defendant's practice; and (6) the proper monitoring of patients during conscious sedation.

## STANDARD

Federal Rule of Evidence 702 imposes upon the Court an important gatekeeping function in determining the admissibility of expert opinions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of establishing its admissibility. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). In considering whether an expert's opinion is admissible, the Court performs a two-step analysis. *103 Investors I,*

*L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, the Court determines whether the expert is qualified by knowledge, skill, experience, training, or education to render the opinion offered. *Id*. Second, if the expert is qualified, the Court must decide whether the expert's opinion is reliable under the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *Id*.

Courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). They decide "how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (citing *Kumho Tire*, 526 U.S. at 152; *United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000)). A survey of case law shows that "rejection of expert testimony is the exception rather than the rule." *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

## DISCUSSION

### I.     Expert Qualifications

Defendant challenges Dr. Horn's qualifications, asserting that Dr. Horn is unqualified "regarding safety of prescriptions and drug interactions" because he is not a

4

pharmacist.[2] Report [Doc. No. 37 at p. 1-2].

Rule 702 states that an expert witness may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. In general, "an expert is permitted wide latitude." *Daubert*, 509 U.S. at 592. If the expert "stays within the reasonable confines of his subject area . . . a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (internal quotations and citations omitted).

Upon consideration of the motion and the record, the Court finds that Dr. Horn is qualified to offer opinions regarding the safety and adverse effects of the medications at issue in this case. Dr. Horn has served as the President of the Oklahoma Board of Dentistry, has practiced dentistry for over 40 years, and has extensive experience working with various sedation techniques. *See* Report [Doc. No. 37 at p. 1]. His experience provides the foundational knowledge necessary to compare Defendant's prescription practice to the professional dental practice at large.

The fact that Dr. Horn is a dentist, and not a pharmacist, is not a barrier to admissibility. An expert is "not strictly confined to his area of practice." *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)). Because a dentist would reasonably be expected to understand the safety of the prescription and sedation practices of other

---

[2] Defendant does not challenge Dr. Horn's qualifications to testify about dentistry or conscious sedation. Def. Mot. to Excl. at 2. A brief review of the record provides ample evidence by which to find Dr. Horn qualified. Dr. Horn is a graduate of the University of Oklahoma College of Dentistry, maintains a dental permit from the Oklahoma Board of Dentistry to provide conscious sedation treatment, and has been practicing dentistry for over 40 years. *See* Report [Doc. No. 37 at p. 1].

dentists, Dr. Horn's lack of pharmacy experience goes to weight and not admissibility.

## II.   Reliability of Expert Testimony

Defendant does not challenge the reliability of Dr. Horn's methodology. Pursuant to the Court's gatekeeping function, however, the Court addresses the issue.

Upon review of the expert report, the Court finds Dr. Horn's methods reliable. Dr. Horn's opinions are derived from a comparison of Defendant's practices as observed from medical records and deposition testimony with industry standards as identified by Dr. Horn and promulgated by the Oklahoma Board of Dentistry. This methodology is sufficient under Fed. R. Evid. 702. *See* Report [Doc. No. 37 at p. 1-2, 7-10, 12-13]; *see also Daubert* 509 U.S. at 593-94 (a practice's "[w]idespread acceptance can be an important factor" in finding evidence admissible); *Kumho Tire Co.*, 526 U.S. at 153 (same).

## III.   Relevance of Expert Testimony

Defendant challenges the relevance of certain portions of Dr. Horn's report. Specifically, Defendant argues Dr. Horn's comments on the following topics are irrelevant to the ultimate issue of Defendant's prescription practices:

1. The presence of expired sedative antagonists in Defendant's office stock;
2. Defendant's intravenous application of Midazolam;
3. The accuracy of Defendant's medical records;
4. The appropriate dosing of certain prescriptions kept in Defendant's office stock;
5. Purported violations of Oklahoma Board of Dentistry statutes and regulations; and

      6. The failure to properly monitor patients during conscious sedation.

Def. Mot. to Excl. at 2-3; Report [Doc. No. 37 at 7-8, 10-14]. Defendant asserts that each of the above comments go beyond the scope of this case—whether "prescriptions written by Defendant were issued for a legitimate medical purpose or within the ordinary course of professional practice." Def. Mot. to Excl. at 2.

      Defendant is correct that the Court must address relevance when ruling on a *Daubert* motion. *See Daubert*, 509 U.S. at 589 (stating that "any and all scientific testimony or evidence admitted [must be] not only relevant, but reliable"). But relevance is governed by Fed. R. Evid. 401. *See Daubert*, 509 U.S. at 587 (discussing Rule 401).

      Under Rule 401, relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (citing Fed. R. Evid. 401). The standard "is liberal[.]"[3] *Id.*

      Under this standard, the Court has no trouble finding that each of the contested portions of Dr. Horn's report is relevant. Item 3—medical record inaccuracies—inform how medication should be prescribed and in what quantity. *See* Pl. Opp. to Def. Mot. at 4-5; Report [Doc. No. 37 at p. 1-2]. The remaining items—all of which relate to appropriate dental practice (i.e. the intravenous use of Midazolam, appropriate dosing, etc.)—are not

---

[3] The Tenth Circuit has adopted a dual inquiry: "(1) whether the evidence is probative or factually relevant to the proposition asserted (i.e., whether the evidence tends to make the existence of that fact more or less probable), and (2) whether the proposition for which the evidence is offered is properly provable in the case (i.e., the fact is material—of consequence—to the question of state law)." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 881 (10th Cir. 2006).

only relevant, but central to the issue in this case. Each matter presents the fact finder with the background necessary to evaluate Defendant's overall practice, including the appropriateness of prescription decisions. Thus, the challenged testimony will be helpful to the trier of fact in determining whether Defendant's prescriptions had a legitimate medical purpose in the usual course of professional practice.[4]

## CONCLUSION

The Court finds the government has met its burden under Fed. R. Evid. 702. Dr. Horn is qualified as an expert by knowledge, skill, experience, training, or education. Furthermore, it is more likely than not that (a) Dr. Horn's scientific, technical, or other specialized knowledge will help the trier of fact; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

**IT IS THEREFORE ORDERED** that Defendant's *Daubert* Motion to Exclude Certain Opinions of Bruce Horn [Doc. No. 33] is **DENIED.**

**IT IS SO ORDERED** this 11th day of July 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[4] Defendant also argues that even if Dr. Horn is qualified and his testimony is relevant, his opinions are nonetheless unfairly prejudicial and should be excluded from the fact finder's consideration. Def. Mot. to Excl. at 6-7. But Defendant does not develop his argument regarding unfair prejudice beyond simply claiming the challenged testimony would be prejudicial. Therefore, the Court declines to rule on this issue at this time. *See Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218-19 (D. Kan. 2007) (stating that courts should generally "defer rulings on … unfair prejudice objections until trial when the factual context is developed").