## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-680-D |
| | ) | |
| ELI JARJOURA, D.D.S., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This case arises out of Plaintiff's allegations that Defendant dispensed Schedule IV controlled substances without a "legitimate medical purpose in the usual course of his professional practice" in violation of the Controlled Substances Act ("CSA"). 21 U.S.C. §§ 829, 842(a)(1). Plaintiff seeks statutory penalties under 21 U.S.C. § 842(a)(1) and 842(c)(1)(A).

Before the Court is Plaintiff United States of America's Motion for Partial Summary Judgment with Brief in Support [Doc. No. 35]. Plaintiff seeks judgment under Fed. R. Civ. P. 56 on the issue of Defendant's liability. For the reasons set forth below, the motion is granted.

1

# BACKGROUND[1]

Defendant is a licensed, practicing dentist in the State of Oklahoma. From 2019 to 2020, Defendant offered conscious sedation medication treatment to patients who were anxious about an upcoming dental procedure. Patients could choose between oral and intravenous options. For patients choosing the oral option, Defendant prescribed the Schedule IV controlled substances Alprazolam (Xanax®) and/or Triazolam (Halcion®)—both benzodiazepines.

Defendant's typical practice was to prescribe six tablets of .5 mg Alprazolam and six tablets of .25 mg Triazolam (a "6 & 6" prescription). According to Defendant, each patient was instructed to take one .5 mg Alprazolam and one .25 mg Triazolam one hour before the scheduled appointment and bring the remaining medication to the procedure. Defendant would then hold the remaining medication during the encounter to administer if necessary. After finishing, Defendant states that he would dispose of any unused medication.

When asked during his deposition why he prescribed the above quantities, Defendant testified that he "anticipat[ed]" that "more than one encounter" might be necessary. So, for the sake of "convenience," and to be "prepared for anything," the 6 & 6

---

[1] This statement includes material facts that are properly supported and not opposed in the manner required by Fed. R. Civ. P. 56(c) and LCvR56.1(d). Defendant does not appropriately dispute any of Plaintiff's facts by citing to specific evidence that controverts them. *See* Def's. Resp. Br. Accordingly, as set forth herein, the Court accepts as true all material facts asserted and properly supported by the United States' motion for summary judgment. *See* LCvR56-1(c).

To the extent either party's statement of facts drift into legal argument, they are disregarded.

2

prescription allowed his patients to obtain medication for multiple encounters without having to make a second trip to the pharmacy. Of the patients who received a 6 & 6 prescription, however, only one such patient required a second encounter, and that patient received a new prescription prior to returning for the follow-up appointment.

Plaintiff's expert witness, Dr. Bruce Horn, has practiced dentistry for over 40 years (*see* Order [Doc. No. 55]) and submitted a declaration in support of Plaintiff's motion [Doc. No. 35-3]. According to Dr. Horn, the standard of care for conscious sedation requires administering the lowest dosage of any medication that will safely reduce preoperative anxiety. The usual practice is to prescribe one dose of .25 mg Triazolam (alone) for ingestion one hour before an appointment.[2] Alprazolam is not considered a first-choice sedation medication for such situations.[3] If it is used, the usual dosage is one .5 mg tablet taken 60-90 minutes before a scheduled procedure.

Dr. Horn "is not aware of any reliable, accepted publication supporting the combined use of these 2 sedatives in sedation dentistry" or "any reliable evidence to support an increased effectiveness or patient safety with the concomitant use of Alprazolam and Triazolam in any dosages." Furthermore, "[t]here cannot be a case made in the usual course of professional practice for [Defendant] prescribing these dosages and quantities[.]" Such combinations are "outside the usual course of professional practice."

---

[2] The dose may vary between .125mg and .5mg depending on the patient.
[3] Alprazolam is not preferred because it takes up to 2 hours to achieve maximum effect and remains in the blood for longer than needed.

Defendant, when asked to identify another dentist in Oklahoma who prescribes a 6 & 6 regimen, stated that he could not speak to other dentists' prescription practices. In response to an interrogatory, he admitted that he "never directed a patient to ingest … [so much as 8 of the 12 prescribed pills] on one day for one procedure." *See* Def.'s Supp. Resp. to First Reqs. for Admis., at Reqs. 5 & 6 [Doc. No. 35-5].

The 6 & 6 prescription is not the only practice at issue in this case.[4] Some of Defendant's patients received an additional benzodiazepine, Versed/Midazolam, as well as nitrous oxide, during their encounters.[5] Several ingested the final round of sedation medication near the end of their encounter—when medicating procedure-induced anxiety is unnecessary.[6] Moreover, S.S. received an "iv with medazolam for additional comfort[.]"

In Dr. Horn's opinion, "[a] legitimate medical purpose for prescribing a [6 & 6] …, while also administering Versed to one patient for [ ] one general dental appointment lasting less than 2 hours does not exist[.]" Doing so places patients "at risk of devolving into deep sedation/ general anesthesia[,]" which Defendant is not licensed to practice.[7]

Lastly, for certain patients, Defendant elected to dispense Alprazolam and Triazolam from his office stock rather than through a prescription.[8] In 29 of the 30 recorded instances

---

[4] The government, however, only seeks summary judgment as to liability concerning Defendant's prescription practices.

[5] For example, patients G.S., T.C., S.S., and S.W. all ingested six of their 12 prescribed benzodiazepines and received nitrous oxide analgesia.

[6] After S.W.'s first encounter, Defendant prescribed another 6 & 6 for a second encounter (increasing the Alprazolam to 1 mg doses). Defendant's medical records do not indicate how those tablets were used or why they were prescribed.

[7] Defendant stopped prescribing 6 & 6 prescriptions in 2021.

[8] His office stock consisted of .125mg tablets of Triazolam, as well as .5 mg tablets of Alprazolam.

4

in which that occurred in 2019, and 13 of the 14 instances in 2020, Defendant dispensed one .125 mg tablet of Triazolam and one .5 mg tablet of Alprazolam. In the two other instances, Defendant dispensed two .5 mg Alprazolam (or 1 mg) and two .125 mg Triazolam (or .25 mg).

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* Fed. R. Civ. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law." *Anderson*, 477 U.S. at 251-52.

## Analysis

Section 829 requires "a written or oral prescription" to dispense Schedule IV medications except when dispensed directly by a practitioner. 21 U.S.C. § 829(b). Such prescriptions "must be issued [(1)] for a legitimate medical purpose by an individual practitioner [who is (2)] acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).[9] [10] Violators are "subject to the penalties provided … [under] provisions of law relating to controlled substances." *Id; see also* 21 U.S.C. § 842(a)(1), (c) (providing for the "civil penalt[ies]" under the CSA).

Factors indicating an improper purpose include prescribing medications without (1) a medical justification, (2) an adequate physical examination, (3) satisfactory medical records evidencing the purpose of the medication, and/or (4) prescribing excessive

---

[9] Plaintiff relies on *United States v. Kahn*, 58 F.4th 1308, 1316 (10th Cir. 2023) to support the proposition that both requirements are objective. *See* Motion [Doc. No. 35, at p. 18]. *Khan*, however, addresses the scienter requirement at issue in 21 U.S.C. § 841, which is not at issue in this case. *See* Complaint [Doc. No. 1] (alleging violations under §§ 829 and 842(a)(1)). Furthermore, *Khan* requires "The government [to] prove that a 'defendant knew or intended that his or her conduct was unauthorized'" and therefore, *does not* apply an objective standard. *Kahn*, 58 F.4th at 1314. The provision at issue in § 829 does not replicate § 841's "knowing[] or intentional[]" language and an objective standard is appropriate.

[10] Defendant argues the regulation is nonbinding because, per *Loper Bright Enter. v. Raimondo*, 603 U.S. 369 (2024), courts are no longer required to apply deference to agency interpretations of contested statutory language. However, the Supreme Court has held 21 C.F.R. § 1306.04 is a mere "parroting regulation" that "repeats two statutory phrases and attempts to summarize [ ] others." *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006). Therefore, the Court is confident that § 1306.04 accurately reflects Congress's intent. *See also supra* "Subsection 2. Legal Dispute" (citing the statute's plain language that the regulation parrots).

quantities and dosages. *See, e.g., United States v. Wilson*, 98 F.4th 1204, 1218 (10th Cir.

2024) (collecting cases); *United States v. MacKay*, 715 F.3d 807, 821-22 (10th Cir. 2013).

Plaintiff contends there is no dispute of material fact and the government has put

forward sufficient evidence for judgment as to liability under the CSA. Defendant

responds, arguing summary judgment is inappropriate because (1) there is a genuine

dispute of material fact as to whether Defendant's sedation practices had a legitimate

medical purpose, and (2) the practices at issue in this case fall outside the scope of the

Controlled Substances Act. The Court addresses each argument in turn.

   1. *Factual Dispute*

Defendant contends that Plaintiff is unable to carry its burden under Rule 56. In

Defendant's telling, Plaintiff relies on Dr. Horn's testimony to prove Defendant's sedation

practices had no legitimate medical purpose; but Dr. Horn did not state that no support

exists for Defendant's practices, only that he was "*not aware* of any reliable, accepted"

support. (Emphasis added). Because, according to Defendant, one expert's ignorance about

the body of potential support available cannot foreclose the possibility of a genuine

material dispute, summary judgment is inappropriate.

Defendant mischaracterizes Dr. Horn's testimony. Dr. Horn first states that he is

unaware of any reliable evidence supporting combining Triazolam with Alprazolam. He

goes on to state "[t]here cannot be a case made in the usual course of professional practice

for [Defendant] prescribing these dosages and quantities[.]" That combination is "outside

the usual course of professional practice[.]" *See U.S. v. Schneider*, 704 F.3d 1287, 1294

(10th Cir. 2013) (holding experts may "refer to the law in expressing their opinion"

(internal quotation marks omitted)). Dr. Horn then cites specific practices that potentially placed Defendant's patients at risk of general anesthesia / deep sedation.

Moreover, Plaintiff relies on more than Dr. Horn's testimony. Plaintiff cites Defendant's own practices. Specifically, Defendant (1) never administered all 12 benzodiazapenes despite regularly prescribing a 6 & 6 regimen, (2) falsely stated that the only reason he prescribed such high quantities was to prepare for the contingency of a follow-up appointment (which almost never occurred, and the one time that did occur, the patient received a second prescription), and (3) Defendant used far lower doses when administering Schedule IV drugs from his office stock than when prescribing them.

Plaintiff has therefore submitted considerable evidence showing that prescribing the Schedule IV medications in the quantities at issue here for conscious sedation, alone or in combination with intravenous methods, is outside the usual course of professional practice, and that overprescribing such drugs for the sake of patient "convenience" is not a legitimate medical purpose. Plaintiff has therefore carried its burden under Rule 56 as to liability. Defendant must respond with "specific facts" that would be admissible in evidence showing a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Defendant has not done so. The Court therefore finds summary judgment proper on the issue of liability.[11]

---

[11] Defendant further argues his practice of instructing patients to bring remaining medications to the appointment militates against concluding that Defendant violated the CSA. As Plaintiff points out, however, the CSA prohibits invalid prescriptions of controlled substances. 21 U.S.C. §§ 829(b), 830(b)(2)(A)(ii); 21 C.F.R. § 1306.04(a).

2. *Legal Dispute*

Defendant advances two legal challenges to Plaintiff's motion. He first argues the CSA does not prohibit the activity at issue because—citing *Gonzales v. Oregon*, 546 U.S. at 270—the statute "manifests no intent to regulate the practice of medicine generally."[12] According to Defendant, the government is exceeding its authority by asserting claims based on Defendant's prescription of controlled substances that do not implicate the kinds of trafficking and abuse concerns that the CSA rightly addresses.

Defendant's assertions are incorrect. The CSA provides for a "civil monetary penalty" for physicians whose conduct "fall[s] outside the usual course of professional practice," or whose prescriptions have no "legitimate medical purpose." *United States v. Bradshaw*, CIV-23-00546-JD, 2024 WL 4521387, at *5 (W.D. Okla. Oct. 17, 2024) (citing *Wilson*, 98 F.4th at 1216 and 21 U.S.C. § 844(a)). Furthermore, the CSA exists to "provide meaningful regulation over *legitimate* sources of drugs[.]" *Gonzales v. Raich*, 545 U.S. 1, 10 (emphasis added). It does this through "a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Id.* at 13 (citing 21 U.S.C. §§ 841(a)(1), 844(a)). The law's plain language states that "no controlled substance in schedule … IV … may be dispensed without a written or oral prescription[.]" 21 U.S.C. § 829(b). A "valid prescription," is one

---

[12] On this basis, Defendant asks that the Court to consider his response to the instant motion an independent motion for summary judgment. Defendant's request fails to comply with LCvR7.1(c), stating that any "response to a motion may not also include a motion or a cross-motion made by the responding party." The Court, therefore, denies Defendant's request.

that "is issued for a legitimate medical purpose" by an individual practitioner acting "in the usual course of the practitioner's professional practice." 21 U.S.C. 830(b)(3)(A)(ii). The CSA therefore prohibits the conduct at issue in this case.

Second, Defendant argues the phrase "legitimate medical purpose" is "open to varying constructions, and [is] thus ambiguous in the relevant sense." Resp. at 12 (citing *Gonzales v. Oregon*, 546 U.S. at 258). Because the statute is ambiguous, Defendant argues, the rule of lenity should apply and the Court should find Defendant's prescription practices comply with the statute.

The Court disagrees. The rule of lenity applies if, "after consulting traditional canons of statutory construction" (*United States v. Shabani*, 513 U.S. 10, 17 (1994)), the Court is left with no more than a "guess as to what Congress intended" (*Muscarello v. U.S.*, 524 U.S. 125, 138 (1998) (internal citations omitted)). Here, the Court does not guess at the intent of Congress. *See Mackay*, 715 F.3d at 824 (holding "the Controlled Substances Act is not vague."). Even accepting that the phrase "legitimate medical purpose" is open to reasonable interpretation within a universe of sensible practices, Defendant has not put forward evidence that his specific sedation practices exist within that universe. Therefore, in light of the CSA's plain language, the Court is not persuaded by Defendant's argument.

## Conclusion

Plaintiff has submitted sufficient evidence to foreclose disputes of material fact as to liability concerning Defendant's prescription of Schedule IV medications under the CSA. 21 U.S.C. §§ 829, 842(a)(1), and Plaintiff is entitled to judgment as a matter of law on that issue.

**IT IS THEREFORE ORDERED** that Plaintiff United States of America's Motion for Partial Summary Judgment with Brief in Support [Doc. No. 35] is **GRANTED**.

**IT IS SO ORDERED** this 4th day of August, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge